1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

8

**EASTERN DISTRICT OF CALIFORNIA**

9
10
11

**CEASAR CAMPOS, LATANA M. CHANDAVONG, NENG HER, and HUGH YANG,**

12

**Plaintiffs**

13

**v.**

14

**FRESNO DEPUTY SHERIFF'S ASSOCIATION, COUNTY OF FRESNO, and XAVIER BECERRA in his official capacity as Attorney General of California,**

15
16
17

**Defendants**

**CASE NO. 1:18-CV-1660 AWI EPG**

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

(Doc. Nos. 36, 40, 44)

18
19

    This is a dispute between current and former members of the Fresno County Sheriff's

20

Department regarding the collection of union dues by Fresno County. The operative complaint is

21

the First Amended Complaint ("FAC"). In essence, Plaintiffs' contend that after *Janus v.*

22

*AFSCME*, 139 S.Ct. 2448 (2018), their union, Defendant Fresno Deputy Sheriff's Association

23

("FDSA"), and Defendant Fresno County ("the County") have unconstitutionally collected dues or

24

service fees from their paychecks and unconstitutionally refused to accept the Plaintiffs'

25

resignation from the FDSA. Currently before the Court is a Rule 12(b)(1) and Rule 12(b)(6)

26

motion to dismiss by the FDSA, and a Rule 12(b)(6) motion to dismiss by California Attorney

27

General Becerra ("the AG"). For the reasons that follow, the motions will be granted.

28

# **LEGAL FRAMEWORK**

*Rule 12(b)(1)*

Federal Rules of Civil Procedure 12(b)(1)allows for a motion to dismiss based on lack of subject matter jurisdiction.  See Fed. R. Civ. Pro. 12(b)(1).  It is a fundamental precept that federal courts are courts of limited jurisdiction.  <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 374 (1978); <u>K2 Am. Corp. v. Roland Oil & Gas</u>, 653 F.3d 1024, 1027 (9th Cir. 2011).  Limits upon federal jurisdiction must not be disregarded or evaded.  <u>Owen Equip.</u>, 437 U.S. 365, 374 (1978); <u>Jones v. Giles</u>, 741 F.2d 245, 248 (9th Cir. 1984).  "It is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994); <u>K2 Am.</u>, 653 F.3d at 1027.  Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence.  <u>See</u> <u>Leite v. Crane Co.</u>, 749 F.3d 1117, 1121 (9th Cir. 2014); <u>Safe Air For Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004).  When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the court determines whether the factual allegations are sufficient to invoke the court's subject matter jurisdiction.  <u>See</u> <u>Leite</u>, 392 F.3d at 362; <u>Meyer</u>, 373 F.3d at 1039.  When a defendant makes a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  <u>Meyer</u>, 373 F.3d at 1039; <u>see</u> <u>Leite</u>, 749 F.3d at 1121.  The court need not presume the truthfulness of the plaintiff's allegations under a factual attack.  <u>Wood v. City of San Diego</u>, 678 F.3d 1075, 1083 n.2 (9th Cir. 2011).

*Rule 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  <u>See</u> <u>Mollett v. Netflix, Inc.</u>, 795 F.3d 1062, 1065 (9th Cir. 2015).  In reviewing a complaint under Rule 12(b)(6), all well-

pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015).  The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).  To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065.  In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters subject to judicial notice.  In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014).  If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ."  Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016).  However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities.  Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

**BACKGROUND**

Plaintiff Ceasar Campos ("Campos") is a Deputy Sheriff in the Fresno County Sheriff's Department, Plaintiff Latana Chandavong ("Chandavong") is a Deputy Sheriff in the Fresno County Sheriff's Department, Plaintiff Neng Her ("Her") is a Community Service Officer in the Fresno County Sheriff's Department, and Plaintiff Hugh Yang ("Yang") is a retired Bailiff Deputy Sheriff from the Fresno County Sheriff's Department.  Plaintiffs Campos, Chandavong, and Yang allege that, as a condition of employment, they were forced to either join the FDSA and pay full membership dues or not join the FDSA and pay "fair-share service fees."  Plaintiffs also allege that, pursuant to Cal. Gov. Code § 1157.12(b), county employees are required to direct

1   cancelations or changes in payroll deductions regarding employee organizations to the employee

2   organization.  Section 1157.12(b) requires the County to rely on information provided to them by

3   an employee organization and provides that payroll deductions may be revoked only pursuant to

4   the terms of the employee's written authorization.

5        Campos alleges that he joined the FDSA when he began his employment with the County

6   in 2013.  Campos completed a "County of Fresno Employee Representative Authorization Card"

7   ("ERA Card").  See Doc. No. 40-3.[1]  The ERA Card reads:  "Most Fresno County Employees are

8   represented by a union/association, which is certified under the ordinance Code as exclusive

9   representative.  The County and these groups have agreed that each employee has the option to

10  become or not become a member or pay a service fee.  Therefore, check your choice under No. 10

11  and 11 below."  Id.  Item 10 is entitled "Status" and has three boxes to check, "New," "Cancel,"

12  and "Change"; Campos checked "New."  Id.  Item 11 is entitled "Deduction Options," and

13  required an employee to check one of three boxes.  Id.  The three "deduction options" are:  "I

14  choose to become a member," "I choose NOT to become a member or pay a service fee," and "I

15  elect to pay a service fee."  Id.  Campos selected "I chose to become a member."  Id.  On the back

16  of the card is a paragraph that is entitled in bold type and all caps:  "Important – Please Read The

17  Following Paragraph Before Signing Below."  Id.  That paragraph reads:  "I understand that, if I

18  have opted to become a member, my signature below authorizes the deduction of any amounts

---

19  [1] The ERA Cards of Campos and Yang were submitted as an exhibit to the FDSA's motion to dismiss.  The FDSA

20  argues that because Plaintiffs contend that the terms of union membership are unconstitutional, and because the ERA
    Card is part of the membership terms, the Plaintiffs' claims depend on the ERA Card.  Thus, the ERA Card may be

21  considered under the incorporation by reference doctrine.  See Knievel v. ESPN, Inc., 393 F.3d 1068 (9th Cir. 2005).
    Without any elaboration or explanation, Plaintiffs disagree that their claims depend on the ERA Card, but agree that

22  the ERA Cards of Campos and Yang are authentic.  The Court notes that at FAC ¶ 64, Plaintiffs allege that the FDSA
    committed conversion by taking and redirecting Plaintiffs' money without securing clear, affirmative, and freely given

23  consent.  This allegation very much implicates the ERA Cards, which expressly authorized the collection of dues or
    fees.  At the least, ¶ 64 would appear to incorporate the ERA Cards under Knievel.  See id.  Additionally, the ERA

24  Card is entitled as a County document ("County of Fresno Employee Representative Authorization Card"), the ERA
    Card signed by Campos has a box identified for "County Use," and Article 17 of the Memorandum of Understanding

25  that was attached to the FAC states that the County is to keep a registry of signed forms regarding membership and
    also shall deduct fees and dues "under the authority of an authorization card furnished by the County and signed and

26  dated by the employee."  Doc. Nos. 24-1, 24-4.  These facts all indicate that the ERA Card is a County document.
    Government documents can be the subject of judicial notice.  See Deehog v. Anheuser-Busch InBev SA/NV, 899 F.3d

27  758, 763 n.5 (9th Cir. 2018).  Since Plaintiffs do not dispute the authenticity of the ERA Cards, and in fact make
    arguments in opposition based on the contents of the ERA Cards, and given the strong indications that the ERA Cards

28  are government forms/documents, the Court finds that consideration of the ERA Cards are appropriate through
    judicial notice, see Deehog, 899 F.3d at 763 n.5, and the incorporation by reference doctrine.  See Knievel, 393 F.3d
    at 1076.

4

voted for pursuant to the provisions of my organization's constitution or bylaws at a general membership meeting and certified by the President of the organization and <u>this authorization shall remain in force and effect until the withdrawal period specified in the Memorandum of Understanding for my job class</u> and after being rescinded by me on the proper card." <u>Id.</u> (underline in original).  Campos attempted to resign his membership on August 20, 2018, shortly after the *Janus* decision.  On August 29, 2018, the FDSA responded that *Janus* does not apply to union members and that the FDSA will only consider requests to withdraw membership that conform to the requirements set forth in Memorandum of Understanding ("MOU") Article 17.[2] Article 17 provides for a one-month window for resignation of membership that opens two months before the MOU expires.  <u>See</u> Doc. No. 24-4.  The then existing MOU expired on December 15, 2019, which meant that FDSA did not allow Campos to resign his membership until November 2019.  After Campos received FDSA's letter denying his attempted withdrawal, he e-mailed the County Payroll and Human Resources Department and cc'd the FDSA.  Campos's email stated that he resigned his membership in the FDSA, he has informed FDSA of his withdrawal and instructed them to stop taking dues from his paycheck, and he revoked any authorizations for payroll deductions or wage diversions to the FDSA.  The FDSA immediately responded to all recipients with a copy of MOU Article 17, and thus, effectively instructed the County to continue making deductions from Campos's check.

Chandavong joined the FDSA in 2002.  In January 2014, Chandavong attempted to resign from the FDSA, but like Campos, the FDSA referenced MOU Article 17 and stated that Chandavong could not resign at that time.  In 2015, Chandavong made a second attempt to resign from the FDSA, but the FDSA again refused to accept the withdrawal due to MOU Article 17. Finally, in December 2016, the FDSA granted Chandavong's withdrawal from membership and he became a "fair-share service fee" payer.  However, the FDSA continued to take "fair-share service fees" from Chandavong's paychecks until July 30, 2018, despite *Janus*.

Yang retired from the County in March 2019 but had been a member of the FDSA since 1999.  In 1999, Yang signed a "County of Fresno Employee Representative Authorization Card"

---

[2] Unless otherwise noted, a reference to the MOU refers to the MOU that terminated in December 2019.

that was materially identical to the card signed by Campos.  See Doc. No. 40-3.  Like Campos, Yang chose to become a member of the FDSA.  See id.  Prior to retirement, Yang unsuccessfully attempted to withdraw from the FDSA in 2016.  In August 2018, Yang sent a letter to the FDSA that referenced *Janus* and attempted to resign his membership.  The FDSA responded that *Janus* did not apply to Yang and that Yang could only resign under procedures of MOU Article 17.

MOU Article 17 is entitled "Association Security."  With respect to membership, Article 17 states that "[e]ach new employee shall become a member or pay a service fee equal to dues, unless said employee opts not to either become a member nor pay a service fee at the time of employment."  Doc. No. 24-4.  With respect to withdrawal of membership, Article 17 provides that "[m]embers may withdraw only by forwarding, by registered mail, notice of revocation of authority to withhold dues to the Association and by filing a withdrawal card at the same time according to procedures specified by the County during the full calendar month immediately preceding the expiration date of this MOU, or when their job classification is removed from the [Bargaining] Unit."  Id.  Article 17 requires the County to deduct "dues, fees, and other monies as may be agreed upon between the County and the Association under the authority of an authorization card furnished by the County and signed and dated by the employee."  Id.  Article 17 obligates the County, subject to the Employee Relations Ordinance of the County, "to continue deducting dues, fees, and other agreed monies from the employee's pay."  Id.

Campos, Yang, and Chandavong contend that their rights under *Janus* were violated when their initial resignations were not honored and when dues and fees continued to be automatically taken from their paycheck.  These Plaintiffs contend that they have a right to resign membership at any time and are entitled to the money that was taken from their paychecks.

Her alleges that the FDSA started taking vacation hours his paycheck, even though Her had never been a member of the FDSA.  Even after *Janus*, the County and the FDSA continue to divert vacation hours without Her's permission or consent.  Similarly, the County and the FDSA took vacation hours from Campos, Chandavong, and Yang, as well.  The FDSA took vacation hours from Chandavong in September 2018 and March 2019, even though the FDSA acknowledged that he was no longer an FDSA member.  The forced transfer of vacation hours is

1   improper under *Janus*.  Her, Chandavong, and Campos request the restoration of vacation hours,

2   and Yang requests compensation for the hours taken.

3         Finally, Chandavong alleges that the County compels him to purchase health and dental

4   insurance through FDSA, even though Chandavong is not a union member and does not wish to

5   purchase insurance through the FDSA.  Instead, Chandavong wants to purchase insurance through

6   the Veteran's Administration, which offers insurance at a much lower price than the FDSA.  When

7   Chandavong attempted to discontinue his insurance through the FDSA by emailing the County

8   Human Resources Department, the County responded that the "FDSA does not allow employees

9   to opt out of the insurance."  The FDSA also responded to Chandavong that the MOU and ERISA

10   regulations require his participation in the FDSA healthcare plan.

11         From these allegations, Plaintiffs bring six claims under 42 U.S.C. § 1983, the Declaratory

12   Judgment Act, and various state law theories.  The first cause of action is based on an

13   "unconstitutional agency shop," and complains that Campos, Chandavong, and Yang were

14   unconstitutionally required to subsidize the FDSA.  The second cause of action is based on an

15   "unconstitutional refusal to accept resignations from union membership," and complains that

16   FDSA refused to honor the various resignations of Campos, Chandavong, and Yang.  The second

17   cause of action includes various state law claims.  The third cause of action is based on "unlawful

18   confiscation of hours."  This is the only cause of action in which Her is a plaintiff.[3]  The fourth

19   cause of action is brought only by Campos and alleges that Cal. Gov. Code § 1157.12(b) is

20   unconstitutional in light of *Janus*.[4]  The fifth cause of action is brought by Chandavong and is

21   based on the FDSA collecting fair-share service fees for two pay periods after *Janus*.  Finally, in

22   the sixth cause of action, Chandavong complains that the FDSA and the County compel him to

23   purchase health and dental insurance through the union, even though he is no longer a member.

24

25    

26   [3] The third claim is expressly not the subject of the FDSA's motions.  Because the third cause of action is not at issue, a reference to "Plaintiffs" in this order refers to Campos, Chandavong, and Yang.

27   [4] The AG's 12(b)(6) motion only moves to dismiss the fourth cause of action.  The FDSA also moves to dismiss the

28   fourth cause of action through adoption of the arguments made by the AG.  The Court finds that it is appropriate for the AG, not the FDSA, to defend § 1157.12(b).  Therefore, the Court will address the fourth cause of action as part of the AG's motion.

1  **I.      FDSA'S RULE 12(b)(1) & RULE 12(b)(6) MOTIONS**

2      *Defendant's Argument*

3          The FDSA argues that dismissal of the first, second, fourth, fifth, and sixth causes of action

4  is appropriate.  First, none of the Plaintiffs' § 1983 claims are plausible because the FDSA is a

5  private entity that did not act under color of law.  Second, even if the Court finds it acts under

6  color of law, the FDSA argues that it did not violate any of Plaintiffs' constitutional rights.

7  Instead, the FDSA contends that it merely enforced valid contractual provisions that the Plaintiffs

8  had agreed to.  The Plaintiffs expressly and voluntarily authorized their membership dues to be

9  paid through payroll deductions, with a limited period of revocability, in exchange for the benefits

10  of union membership.  *Janus* does not speak to a union member's ability invalidate or ignore a

11  contractual obligation.  Third, the FDSA argues that the good faith defense and Cal. Gov. Code §

12  1159 shield it from any claims relating to no pre-*Janus* service fees or membership dues.  Fourth,

13  the FDSA argues Chandavong's claim for fees deducted post-*Janus* are moot because, in March

14  2019, it sent him a check for the fees plus interest.  Finally, the FDSA argues that there is no

15  actual case or controversy as to Chandavong's insurance related claim.  Chandavong has a

16  selection of insurance options, including one option with no out-of-pocket costs, and his alleged

17  injury resulted only from his selection of insurance options.[5]

18      *Plaintiffs' Opposition*

19          Plaintiffs argue that the first and second causes of action should not be dismissed.  First,

20  Plaintiffs contend that the FDSA acted under the color of state law because they enforced an

21  unconstitutional agency shop law.   MOU Article 17 required Plaintiffs to be union members or

22  pay a fair-share service fee, and the County participated in the MOU.  Further, the ERA Cards do

23  not constitute a contract and do not reference or apply to a future memorandum of understanding.

24  The membership applications at best authorized the payment of money, they did not require

25  ─────────────────────
26  [5] The FDSA argues that the first two causes of action by Campos are subject to arbitration.  Generally, the
    "appropriate procedural mechanism to enforce an arbitration agreement is a motion to compel arbitration, not a motion
27  to dismiss."  Mylan Pharms., Inc. v. Kremers Urban Dev. Co., 2003 U.S. Dist. LEXIS 20665, *12 (D. Del. Nov. 14,
    2003) (quoting West v. Merillat Indus., Inc., 92 F.Supp.2d 558, 561 (W.D. Va. 2000).  The Court finds that the general
    rule should prevail here.  The Court will not address the propriety of arbitration for two claims by one plaintiff as part
28  of a motion to dismiss that is directed at fives claims by three plaintiffs.  The FDSA is free to file a separate motion to
    compel, if necessary.  The Court expresses no opinion about the merits of such a motion.

1  members to maintain membership for any period of time or waive the right to resign membership;

2  the ERA Cards simply authorized the payment of money through deductions.  The membership

3  applications are not supported by consideration and were not signed by anyone from the FDSA or

4  the County.  Also, Chandavong argues that no document has been produced that showed he had

5  ever consented to the payment of fair-share service fees.  Second, Plaintiffs argue that the good

6  faith defense is inapplicable *inter alia* because the good faith defense does not allow a defendant

7  to keep the property or money of another and it does not apply to equitable claims.  Third,

8  although Cal. Gov. Code § 1159 prevents Chandavong from using state law to recover pre-*Janus*

9  legal fees, they do not prevent him from recovering fees that were collected on account of the

10  FDSA's unconstitutional refusal to accept his resignation, nor does § 1159 prevent Campos and

11  Yang from recovering compulsory dues payments while they were forced to work in an

12  unconstitutional agency shop.

13        With respect to the fifth cause of action, Chandavong argues that the FDSA is attempting

14  to settle his claim by giving him a check for the post-*Janus* service fees, plus interest. Chandavong

15  argues that he has not cashed the check because he has demanded costs and attorneys' fees under

16  42 U.S.C. § 1988.  A defendant cannot escape a plaintiff's claim for costs and fees under § 1988

17  by unilaterally tendering money that it took without providing the costs and fees that the plaintiff

18  demands.

19        Finally, Chandavong concedes that, in light of the FDSA's representations that he may opt

20  for FDSA sponsored insurance without paying any out-of-pocket expenses, the Court lacks subject

21  matter jurisdiction over the sixth cause of action.

22        *Discussion*

23        1.      Rule 12(b)(1) Motion

24                a.      Fifth Cause of Action

25        Mootness is a jurisdictional issue.  Foster v. Carson, 347 F.3d 742, 745 (9th Cir. 2003).

26  "[A] case is moot when the issues are no longer 'live' or the parties lack a legally cognizable

27  interest in the outcome."  Powell v. McCormack, 395 U.S. 486, 496 (1969); Pitts v. Terrible

28  Herbst, Inc., 653 F.3d 1081, 1086 (9th Cir. 2011).  That is, if events subsequent to the filing of the

case resolve the parties' dispute, the court must dismiss the case as moot.  Pitts, 653 F.3d at 1087.

"The basic question in determining mootness is whether there is a present controversy as to which

effective relief can be granted."  Bayer v. Neiman Marcus Grp., 861 F.3d 853, 862 (9th Cir. 2017).

Therefore, if "there is no longer a possibility that [a plaintiff] can obtain relief for his claim, that

claim is moot and must be dismissed for lack of subject matter jurisdiction."  Foster, 347 F.3d at

745.

Here, Chandavong seeks a refund of the fair-share fees collected post-*Janus* and attorneys'

fees pursuant to 42 U.S.C. § 1988.  See FAC at 24:13-19.  Approximately four months after this

lawsuit was filed, Chandavong was given the refund of post-*Janus* service fees plus interest from

the FDSA.  See Doc. No. 40-5.  Chandavong has obtained the relief he requested (a refund with

interest), so the Court cannot give him any other effective relief regarding the alleged violation of

his First Amendment rights.  See Pitts, 653 F.3d at 1087; Foster, 347 F.3d at 745.  However, while

claims for attorney's fees do not preserve a matter which has otherwise become moot, the question

of attorney's fees is ancillary to the underlying action and survives independently under the court's

equitable jurisdiction.  See K.C. v. Torlakson, 762 F.3d 963, 968 (9th Cir. 2014); Zucker v.

Occidental Petroleum Corp., 192 F.3d 1323, 1329 (9th Cir. 1999);  Cammermeyer v. Perry, 97

F.3d 1235, 1238 (9th Cir. 1996); United States v. Ford, 650 F.2d 1141, 1143-44 (9th Cir. 1981);

Covenant Media of Cal., LLC v. City of Huntington Park, 377 F.Supp.2d 828, 843-44 (C.D. Cal.

2005); see also Citizens for Responsible Gov't State PAC v. Davidson, 236 F.3d 1174, 1183 (10th

Cir. 2000).  Therefore, while Chandavong may pursue a claim for attorney's fees that is related to

the fifth cause of action, the fifth cause of action is otherwise moot and will be dismissed for lack

of subject matter jurisdiction. See K.C., 762 F.3d at 968; Zucker, 192 F.3d at 1329;

Cammermeyer¸ 97 F.3d at 1238; Ford, 650 F.2d at 1143-44; see also Davidson, 236 F.3d at 1183.

           b.       Sixth Cause of Action

Chandavong states that, in light of FDSA's representations that he may opt for union

sponsored insurance without paying a monthly premium, he agrees that there is not a case or

controversy and that dismissal for lack of subject matter jurisdiction is appropriate.  Given

Chandavong's non-opposition, and the representations of the Union, the Court cannot find that

10

1  Chandavong has shown an injury that is fairly traceable to the FDSA.  See Victory Processing,

2  LLC v. Fox, 937 F.3d 1218, 1225 (9th Cir. 2019) (holding that the irreducible minimum of

3  standing is an injury in fact that is fairly traceable to the defendant actions and likely to be

4  redressed by a favorable termination).  Therefore, dismissal of the sixth cause of action for lack of

5  subject matter jurisdiction is appropriate.  See Naruto v. Slater, 888 F.3d 418, 425 n.7 (9th Cir.

6  2018) (noting that a lack of Article III standing is the proper subject of a Rule 12(b)(1) motion).

7         2.     Rule 12(b)(6)

8        The Court has resolved the fifth and sixth causes of action through Rule 12(b)(1).  Because

9  the third cause of action is not the subject of any motion by FDSA, and because the Court will

10  address the fourth cause of action as part of the Attorney General's motion, the first and second

11  causes of action are the only claims subject to Rule 12(b)(6) analysis.  The Court will address the

12  federal and state claims contained within the first and second causes of action separately.

13             a.     42 U.S.C. § 1983

14        As the Court understands the FAC, the first and second causes of action allege that,

15  through *Janus v. AFSCME*, 138 S.Ct. 2448 (2018) ("*Janus*"), Plaintiffs' First Amendment rights

16  have been violated through the compelled payment of dues or fees to the FDSA (the first cause of

17  action) or by being compelled to maintain membership status with the FDSA (the second cause of

18  action).  On First Amendment grounds, "*Janus* invalidated state agency shop laws requiring

19  nonmembers of a union to pay a fee in support of the union's collective bargaining activities –

20  activities performed on behalf of union members and nonmembers alike."  Interpipe Contracting,

21  Inc. v. Becerra, 898 F.3d 879, 894 n.12 (9th Cir. 2018).  *Janus* overruled *Abood v. Detroit Bd. of

22  Ed.*, 431 U.S. 209 (1977).  Janus, 138 S.Ct. at 2486.  As explained by the Ninth Circuit, *Abood* had

23  "held that unions could collect compulsory agency fees from nonmembers to finance their

24  collective bargaining activities, without running afoul of the First and Fourteenth Amendments."

25  Danielson v. Inslee, 945 F.3d 1096, 1097 (9th Cir. 2019).  After reviewing Plaintiffs' allegations,

26  the Court concludes that there are no plausible First Amendment violations in the first and second

27  causes of action.

28        Plaintiffs have attached a copy of the MOU as an exhibit to the FAC.  MOU Article 1

indicates that the MOU was negotiated in good faith by the County and the FDSA.  See Doc. No.
24-1.  Article 1 also indicates that the FDSA is the "certified organization for Unit 1," which the
Court takes to mean that the FDSA is the exclusive representative for collective bargaining
between certain County employees and the County.[6]  Of particular import for this motion is MOU
Article 17.  Plaintiffs allege in the FAC that they "were forced to either join the FDSA and pay
full membership dues, or else pay 'fair-share service fees' to the union as a condition of their
employment.  See Memorandum of Understanding Between the [FDSA] Unit 1 (Law Enforcement
Personnel), article 17 (attached as Exhibit 1)."  FAC ¶ 14; see also FAC at 2:4-8.  MOU Article 17
is the only evidence cited by Plaintiffs in either the FAC or their opposition that they were
compelled to either join the FDSA or pay fair-share service fees.

However, as quoted above, MOU Article 17 does not require that an employee either be a
member or pay a fair-share fee.  MOU Article 17 expressly gives employees three options:  (1)
join the FDSA, (2) do not join the FDSA but pay a fair-share service fee, or (3) do not join the
FDSA and do not pay a fair-share service fee.  See Doc. No. 24-1; Doc. No. 24-4.  Thus, the
source cited for the proposition that Plaintiffs were required to join the FDSA or pay a service fee
as a condition of employment does not actually support the proposition.  Further, MOU Article 17
states that the County shall deduct an amount from an employee's pay check based on the
employee's authorization card.  The ERA Cards submitted by the FDSA give an employee three
options:  join the FDSA, pay a fair-share service fee, or neither join the FDSA nor pay a service
fee.  See Doc. No. 40-4.  If the employee chose to be a member or pay a service fee, the ERA Card
authorized the County to deduct the appropriate amounts from the employee's paycheck.  See id.
This is consistent with MOU Article 17.

The ERA Cards and the plain language of MOU Article 17 are directly contrary to the
assertion that Plaintiffs were compelled to either pay fees or dues.  Rather, MOU Article 17 and
the ERA Cards reflect that the Plaintiffs voluntarily chose to become members and have dues
automatically deducted, even though they had the option of not becoming a member and not

---

[6] The Court notes that exclusive bargaining relationships remain constitutional post-Janus.  See Mentele v. Inslee, 916
F.3d 783, 791 (9th Cir. 2018).

paying a service fee.  The Court is not required to accept the allegation that Plaintiffs were

required to either pay membership dues or pay service fees as a condition of employment because

that assertion is contradicted by MOU Article 17 and the ERA Cards.  See Daniels-Hall v.

National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  Therefore, the Court does not credit the

allegation that Plaintiffs were required to either pay service fees or dues as a condition of

employment.  See id.  Instead, the Court credits the plain language of MOU Article 17 (and the

ERA Cards) as reflecting that the Plaintiffs voluntarily chose to become members of the FDSA

because neither payment of membership dues nor payment of fair-share service fees were a

condition of employment.

Courts have held that *Janus* does not speak to the ability or right of a union member, who

voluntarily elected union membership, to unilaterally drop his membership despite limitations on

the right to resign from the union.  See, e.g., Fisk v. Inslee, 759 F. App'x 632, 633-34 (9th Cir.

2019); Quirarte v. United Domestic Workers AFSME Local 3930, 2020 U.S. Dist. LEXIS 23469,

*15-*18 (S.D. Cal. Feb. 10, 2020); Hernandez v. AFSCME Cal., 2019 U.S. Dist. LEXIS 219379,

*19-*21 (E.D. Cal. Dec. 19, 2019); Smith v. Teamsters Local 2010, 2019 U.S. Dist. LEXIS

210904, *29-*31 (C.D. Cal. Dec. 3, 2019); Anderson v. Service Empl. Int'l Union Local 503, 400

F.Supp.3d 1113, 1116 (D. Or. 2019); O'Callaghan v. Regents of the Univ. of Cal., 2019 U.S. Dist.

LEXIS 110570, *8 (C.D. Cal. June 10, 2019); Bermudez v. SEIU Local 5, 2019 U.S. Dist. LEXIS

65182, *3 (N.D. Cal. Apr. 16, 2019); Crockett v. NEA-Alaska, 367 F.Supp.3d 996, 1008 (D. Aka.

2019); Cooley v. California Statewide Law Enforcement Ass'n, 2019 U.S. Dist. LEXIS 12545,

*7-*8 (E.D. Cal. Jan. 25, 2019); Smith v. Superior Ct., 2018 U.S. Dist. LEXIS 196089, *1-*3

(N.D. Cal. Nov. 16, 2018); Belgau v. Inslee, 2018 U.S. Dist. LEXIS 175543, *13 (W.D. Wash.

Oct. 11, 2018).  The Court is aware of no cases that have held that *Janus* permits union members

to unilaterally and at any time drop their memberships and/or stop paying their agreed upon dues.

There is no dispute that MOU Article 17 imposes limitations on an FDSA member's ability to

withdraw membership.  Nor is there a dispute that the ERA Cards referenced withdrawal periods

in the MOU.  Because *Janus* does not speak to a union member's ability to unilaterally drop his

membership or stop paying dues, the allegations in the FAC regarding FDSA's refusal to honor

1  the Plaintiffs' unilateral requests to drop their membership status and stop collecting dues do not

2  plausibly show a violation of *Janus*/the First Amendment.  See Hernandez, 2019 U.S. Dist. LEXIS

3  219379 at *19-*21; Cooley, 2019 U.S. Dist. LEXIS 12545 at *7-*8; Belgau, 2018 U.S. Dist.

4  LEXIS 175543 at *13.  Therefore, dismissal of the federal claims in the first and second causes of

5  action is appropriate.

6  <center>b.    Declaratory Judgment Act</center>

7       In the prayer relating to the second cause of action, Plaintiffs request that the following

8  declarations be made:  (1) the FDSA violated Plaintiffs' constitutional rights by failing to

9  promptly accept their resignations from union membership; (2) MOU Article 17 is

10  unconstitutional, void, and without legal effect; and (3) Plaintiffs and all public employees have a

11  constitutional right to resign their union memberships whenever they wish, and that right cannot

12  be limited by a collective bargaining agreement.  Each of these requests are premised on the

13  notion that Plaintiffs have the right to resign from the FDSA whenever they wish.  However,

14  discussed above, the cases are numerous and in agreement:  *Janus* does not recognize a right for

15  union members to unilaterally drop their membership and stop paying dues.  Cooley v. California

16  Statewide Law Enforcement Ass'n, 385 F.Supp.3d 1077, 1079 (E.D. Cal. 2019).  There is no basis

17  in the FAC to utilize 28 U.S.C. § 2201 to issue the declarations sought by Plaintiffs.[7]

18  <center>c.    State Law Claims</center>

19       Plaintiffs aver that they are entitled to relief under the state law torts of conversion and

20  trespass to chattels, as well as theories of replevin, unjust enrichment, restitution, and "any other

21  state law cause of action that offers relief for this unlawful confiscation of plaintiffs' wages."[8]

22  However, the basis for finding the taking of funds wrongful is the premise that *Janus* and the First

23  Amendment provide a right to unilaterally and at any time drop union membership or stop the

24  payment of dues or service fees from being deducted from a pay check.  As discussed above,

25

26  [7] Additionally, because Plaintiffs' requests for refunds and damages necessarily entail a determination that the FDSA violated Plaintiffs' rights, the first item of declaratory relief is subsumed by the § 1983 claim for damages/refunds.

27  See Rhodes v. Robinson, 408 F.3d 559, 566 n.8 (9th Cir. 2005).

28  [8] It should go without saying that pleading relief under "any other state law cause of action" without actually specifying or naming a cause of action comes nowhere close to satisfying Rule 8 and *Iqbal*.

<center>14</center>

1    *Janus* does not recognize such a First Amendment right.  See id.  Further, MOU Article 17 and the

2    ERA Cards show that the Plaintiffs chose to become members (although Chandavong later paid

3    fair-share service fees) and authorized the deduction of dues or fees, despite the option to not be a

4    member and not pay a service fee.  That is, contrary to the allegations, MOU Article 17 and the

5    ERA Cards do not demonstrate that Plaintiffs were compelled to join the FDSA.  Because *Janus*

6    does not aid the Plaintiffs, they have failed to plausibly allege that the deduction of dues or fees

7    after requests to desist is wrongful conduct.  See Bermudez, 2019 U.S. Dist. LEXIS 65182 at \*3;

8    cf. Lee v. Hanley, 61 Cal.5th 1225, 1240 (2015) (defining "conversion" as "the wrongful exercise

9    of dominion over the property of another.").

10   Additionally, California has enacted statutory immunity for the pre-*Janus* collection of

11   fair-share service fees.  "[A] public employer, an employee organization . . . . shall not be liable

12   for, and shall have a complete defense to, any claims or actions under the law of this state for

13   requiring, deducting, receiving, or retaining agency or fair share fees from public employees, and

14   current or former public employees shall not have standing to pursue these claims or actions, if the

15   fees were permitted at the time under the laws of this state then in force and paid, through payroll

16   deduction or otherwise, prior to June 27, 2018 [the date *Janus* issued]."  Cal. Gov. Code. § 1159.

17   Chandavong concedes that his claims for a refund of fair-share service fees are preempted by Cal.

18   Gov. Code § 1159.

19   Finally, apart from the failure to adequately plead wrongful conduct, Plaintiffs' trespass to

20   chattels claim is not plausible.  "Trespass to chattels" is essentially the "little brother of

21   conversion" and applies to interferences with the possession of property that are not sufficiently

22   important to be classified as a "conversion."  Jamgotchian v. Slender, 170 Cal.App.4t h 1384,

23   1400-01 (2009); Thrifty-Tel, Inc. v. Bezenek, 46 Cal.App.4th 1559, 1566-67 (1996).  Trespass to

24   chattels is "an occasional remedy for minor interferences, resulting in some damage, but not

25   sufficiently serious or sufficiently important to amount to the greater tort of conversion."

26   Jamgotchian, 170 Cal.App.4th at 1401.  Here, the allegations are that the FDSA received/receives

27   dues or fees that were automatically deducted from Plaintiffs' paychecks.  That is no minor

28   interference.  But for the authorization to deduct fees that the Plaintiffs' signed, the taking of those

15

1   fees and dues from Plaintiffs' paychecks would clearly amount to conversion.  Because the

2   "interference" with the funds that is alleged is not minor, the tort of trespass to chattels does not

3   apply.

4            For these reasons, dismissal of Plaintiffs' state law claims is appropriate.

5            3.       Leave to Amend

6            With respect to the sixth cause of action, because there is no case or controversy, dismissal

7   of that claim is without leave to amend.

8            With respect to the fifth cause action, dismissal of the state law and § 1983 claims for the

9   collection of service fees post-*Janus* will be without leave to amend because the FDSA has

10  tendered the fees taken, plus interest.  However, because the tender of service fees does not

11  address or moot Chandavong's request for costs and attorneys' fees, Chandavong may allege a

12  separate clam for attorneys' fees and costs under § 1988 that is related to the post-*Janus* service

13  fees.

14           With respect to the first and second causes of action, the parties have engaged in lengthy

15  briefing regarding actions under color of law, contract formation, and the validity of consent.  It is

16  the Court's view that most of these arguments do not reflect the allegations or theories that are

17  fairly noticed within the FAC.  A court may not look beyond the complaint to a plaintiff's

18  memorandum in opposition to a defendant's motion to dismiss.  Broam v. Bogan, 320 F.3d 1023,

19  1026 n.2 (9th Cir. 2003).  Facts raised for the first time in opposition papers should be considered

20  by the court in determining whether to grant leave to amend or to dismiss the complaint with or

21  without prejudice.  Id.  Further, since the briefing on the motion to dismiss was received, there

22  have been developments that touch on the issues raised by the parties.  The Ninth Circuit has held

23  that unions who engaged in practices that were consistent with *Abood* and state law are entitled to

24  a "good faith defense" against retrospective monetary relief.  See Danielson, 945 F.3d at 1105.

25  *Danielson* also indicates that unions that utilize government processes may act under color of law

26  for purposes of § 1983.  See id. at 1102; see also Janus v. AFSCME, 942 F.3d 352, 361 (7th Cir.

27  2019) (finding that union had acted under color of law with respect to the receipt of dues and fees

28  from payroll deductions by a public employer).  Given these considerations, it is unclear that

amendment would necessarily be futile.  Therefore, the Court will give Plaintiffs leave to amend the first and second causes of action.  However, as part of any amendment, Plaintiffs shall do the following:  (1) allege each  state and federal claim separately; (2) eliminate legal arguments related to the good faith defense;[9] and (3) any claims that depend on the absence or invalidity of consent or a contract shall include factual allegations that address the absence or invalidity of consent or a contract.[10]

## II.      THE AG'S MOTION TO DISMISS

### *Defendant's Argument*

The AG argues *inter alia* that § 1157.12(b) is not the source of any injury claimed by Campos.[11]  Section 1157.12(b) does not affect an employee's right to join or leave a union, it merely provides that requests to change or cancel deductions are to be made to the union.  Section 1157.12(b) merely places the responsibility for processing membership paperwork with the union, thereby removing the public employer as an intermediary or arbiter of membership and dues/fees disputes.  Because the union receives the deductions, it makes sense to requests to halt or change deductions be communicated to the union.   Any limit on Campos's right to terminate his union membership and dues withdrawal is dictated by the terms of his relationship with the FDSA, not § 1157.12(b).  Section 1157.12(b) did not require Campos to join the FDSA, nor did it dictate any terms between Campos and the FDSA.  Contrary to Campos's position, *Janus* did not recognize a right for union members to drop the voluntarily entered union members and dues withdrawal authorization.

---

[9] To be clear, the Court is not holding that Plaintiffs cannot argue that the good faith defense somehow does not apply.  The Court is merely holding that Plaintiffs are not to continue to include the lengthy, unnecessary, and now questionable legal arguments about this *defense* as part of their complaint for relief.

[10] The Court notes that Plaintiffs have argued that the absence of a signature by the FDSA on the membership application shows no valid contract.  However, California Civil Code § 3388 permits a non-signatory to enforce a contract against one who has signed, if the non-signatory has nonetheless performed.  Therefore, the mere fact that the FDSA did not sign the membership application does not necessarily mean that no contract was formed or that Plaintiffs were under no contractual obligations.

[11] Again, the fourth cause of action is brought by Campos only.

1    *Plaintiff's Opposition*

2        In relevant part, Campos argues that his membership application is not a contract because

3    there was no consideration and no signature by the FDSA.  Campos contends that he at most

4    agreed to the deduction of dues until the then existing Memorandum of Understanding terminated,

5    there is no agreement regarding future memorandums of understanding.  The membership

6    application does not legally waive any *Janus* rights.  Campos argues that because the membership

7    application does not require deductions through November 2019, § 1157.12(b) is the only source

8    of law that compelled the County to defy his instructions to terminate payroll deductions in the

9    face of union opposition.

10   *Relevant Allegations*

11       In pertinent part, the fourth cause of action reads:

12       Each [section of] § 1157.12(b) is unconstitutional.  A public employer must
         immediately cease union-related payroll deductions upon learning that an employee
13       has resigned from the union and withdrawn his "affirmative consent" to those
         assessments – regardless of whether the employee funnels his request through the
14       union or submits his request directly to the public employee's right to terminate
         payments to a union that he no longer supports.  *See Janus*, 138 S.Ct. at 2486.
15
         The Court should declare section 1157.12(b) unconstitutional and permanently
16       enjoin the defendants from enforcing it.  The FDSA and the County of Fresno must
         return to deputy Campos the money that he was diverted from his wages after he
17       had informed the county's HR department that he had resigned from the union and
         no longer wanted his wages diverted to the FDSA.
18
19   FAC ¶¶ 77, 78.

20       Additionally, the FAC's prayer under the fourth cause of action requests that the Court

21   declare § 1157.12(b) unconstitutional and permanently enjoin the defendants from enforcing it.

22   See FAC ¶ 97.a.  The FAC also requests that the Court order the FDSA to refund dues taken from

23   Campos after he sent his resignation to the FDSA and the County.  Id. at 97.b.

24   *Cal. Gov. Code § 1157.12(b)*

25   Cal. Gov. Code § 1157.12(b) reads:

26       A public employer . . . shall:  Direct employee requests to cancel or change
         deductions for employee organizations to the employee organization, rather than to
27       the public employer. The public employer shall rely on information provided by the
         employee organization regarding whether deductions for an employee organization
28       were properly canceled or changed, and the employee organization shall indemnify
         the public employer for any claims made by the employee for deductions made in

reliance on that information. Deductions may be revoked only pursuant to the terms of the employee's written authorization.

*Discussion*

The FAC does not allege grounds that are sufficient for the Court to declare § 1157.12(b) unconstitutional. Section 1157.12(b) does not compel union membership or the payment of fees, does not dictate what grounds are sufficient to drop a membership or revoke a withdrawal authorization, and does not dictate any terms of union membership. As such, § 1157.12(b) does not compel membership or subsidization of a union.

For at least two reasons, it is reasonable to direct employees to send any requests to withdraw, cancel, or modify their memberships or automatic deductions to the union and in accordance with the terms of the written authorization for payroll deductions. First, "[b]ecause the deductions go to the Union Defendants, it makes sense that the halting of such deductions must be communicated to the Union Defendants rather than the [public employer]." Babb v. California Teachers Ass'n, 378 F.Supp.3d 857 (C.D. Cal. 2019) (finding that Cal. Educ. Code § 45060(e), which has substantially similar provisions to § 1157.12(b), is constitutional). Second, "the First Amendment does not preclude the enforcement 'legal obligations' that are bargained-for and 'self-imposed' under state contract law." Fisk, 759 F. App'x at 632; see also Hernandez, 2019 U.S. Dist. LEXIS 219379 at *19-*21; Babb, 400 Supp.3d at 1005; Cooley, 2019 U.S. Dist. LEXIS 12545 at *7-*8; Belgau, 2018 U.S. Dist. LEXIS 175543 at *13. The union will be more aware of any limitations on a union member's ability to cancel or modify membership status or the payment of dues or fees. It makes sense for such membership related issues to be directed first to the union, with the public employer informed if the employee has properly cancelled or modified his membership or the payment of dues or fees.[12] Therefore, § 1157.12(b) is a useful tool that aids public employers in the administration of their payrolls.

---

[12] The Court understands that Campos argues that he either withdrew his consent to payroll deductions and membership, his consent was not validly obtained, or there is no relevant contract between himself and FDSA. However, that there are points of contention between the FDSA and Campos regarding the terms and limitations that are part of FDSA membership does mean that the administrative scheme of § 1157.12(b) is entirely unconstitutional. Section 1157.12(b) clearly contemplates that a union member has given a valid consent or authorization. See Cal. Gov. Code § 1157.12(a) (requiring unions *inter alia* to maintain a record of an employee's/member's written authorization).

The FAC cites *Janus* at page 2486 in support of its argument that § 1157.12(b) is unconstitutional.  In relevant part, page 2486 of *Janus* reads:

> For these reasons, States and public-sector unions may no longer extract agency fees from nonconsenting employees. Under Illinois law, if a public-sector collective-bargaining agreement includes an agency-fee provision and the union certifies to the employer the amount of the fee, that amount is automatically deducted from the nonmember's wages. §315/6(e). No form of employee consent is required.
>
> This procedure violates the First Amendment and cannot continue. Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

Janus, 138 S.Ct. at 2486 (internal citations omitted).

As can be seen, the Illinois law that was invalidated by *Janus* permitted the extraction of agency fees from an employee's paycheck merely upon the certification from the union of the amount to be deducted, without any consent from the employee.  See id.  That is not § 1157.12(b). Nothing in § 1157.12(b) compels payments from unconsenting employees, and nothing in § 1157.12(b) permits a public employer from taking a payroll deduction purely on the certification from a union of the amount to be deducted.  In fact, § 1157.12(b) expressly mentions an employee's written authorization, and § 1157.12(a) requires unions to maintain a record of an employee's/member's written authorization to make payroll deductions.  See Cal. Gov. Code § 1157.12.  Section 1157.12(b) does not share the same traits of the Illinois law that was held to be unconstitutional in *Janus.*

In sum, Plaintiffs read *Janus* too broadly in relation to § 1157.12(b).  See Fisk, 759 F. App'x at 632; see also Hernandez, 2019 U.S. Dist. LEXIS 219379 at *19-*21; Babb, 400 Supp.3d at 1005; Cooley, 2019 U.S. Dist. LEXIS 12545 at *7-*8; Belgau, 2018 U.S. Dist. LEXIS 175543 at *13.  Because Campos has not sufficiently shown that  § 1157.12(b) is unconstitutional, there is no basis for the Court to declare § 1157.12(b) unconstitutional or enjoin the Defendants from relying upon it or enforcing it.  See Allen v. Santa Clara Cty. Corr. Peace Officers Ass'n, 400 F.Supp.3d 998, 1005 n.4 (E.D. Cal. 2019) ("Even if [the claims were not moot], however, Plaintiff

has failed to identify any constitutional provision actually violated by [§ 1157.12(b)]."); Babb, 400 F.Supp.3d at 1005.  Therefore, dismissal of the fourth cause of action without leave to amend is appropriate.[13]

## ORDER

Accordingly, IT IS HEREBY ORDERED that;

1. The Attorney General's motion to dismiss (Doc. No. 36) is GRANTED;

2. The fourth cause of action in the FAC is DISMISSED without leave to amend;

3. The FDSA's Rule 12(b)(1) motion to dismiss (Doc. Nos. 40, 44) is GRANTED;

4. The fifth and the sixth causes of action are DISMISSED for lack of jurisdiction without leave to amend;[14]

5. The FDSA's Rule 12(b)(6) motion to dismiss (Doc. Nos. 40, 44) is GRANTED;

6. The first and second causes of action are DISMISSED with leave to amend;

7. No later than twenty-one (21) days from the service of this order, Plaintiffs may file a second amended complaint, consistent with the analysis of this order; and

8. If Plaintiffs fail to file a timely second amended complaint, then leave to amend shall be considered automatically withdrawn and Defendants shall file an answer or other appropriate response to the remaining claim in the FAC within twenty-eight (28) days of service of this order.

IT IS SO ORDERED.

Dated:   February 27, 2020                    _____

SENIOR  DISTRICT  JUDGE

---

[13] Campos's request for a refund of collected dues after he attempted to resign from the FDSA and withdraw his consent to payroll deductions is redundant of the relief requested in the first and second causes of action.

[14] As discussed above, Plaintiff's may pursue a claim for fees and costs under § 1988 that is related to the fifth cause of action.